**AFFIDAVIT OF FBI SPECIAL AGENT MARK W. ALFORD**

I.  **INTRODUCTION**

   A.   Your affiant, Mark W. Alford, is a Special Agent of the Federal Bureau of Investigation (Hereafter, "FBI") and has served in that capacity since January 1997.  During that time, I have participated in the execution of numerous search warrants and have also been the affiant in support of search warrant requests.  I am currently assigned to the FBI Bedford, New Hampshire Resident Agency Safe Streets Gang Task Force.

   B.   On the basis of the following information, I submit that there is probable cause to believe that the following cellular telephones and GPS navigational system contain evidence of the crime of Conspiracy to Distribute, and Possess with Intent to Distribute, Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846, and Money Laundering, in violation of Title 18, United States Code, Section 1956. The cellular telephones and GPS Navigational system are described as follows:

   1)   White Samsung T-Mobile cellular telephone
   2)   Black Motorola Tracfone cellular telephone
   3)   Black Motorola T-Mobile 2GB cellular telephone
   4)   Maroon Samsung ATT cellular telephone
   5)   Red/black Nokia Xpress Music cellular phone
   6)   White Samsung T-Mobile cellular telephone
   7)   White Sony Ericsson ATT cellular telephone
   8)   Blue LG ATT cellular telephone
   9)   Red T-Mobile Blackberry cellular telephone
   10)  Blue Nextel Flip i860 cellular telephone
   11)  Motorola i856 Boost Mobile cellular telephone
   12)  Apple IPhone cellular telephone
   13)  Sony Nav-U GPS Unit

   C.   The statements contained in this affidavit are based, in part, on information provided by the FBI, Manchester Police Department, and the New Hampshire State Police.  In addition, the facts supporting this affidavit are also based upon information provided by three confidential informants identified as CI#1, CI#2 and CI#3.  These confidential informants have been deemed

       reliable because their information has been corroborated by independent law enforcement investigation.

  D.  Since this affidavit is being submitted for the purpose of securing authorization for the search of several phones and a GPS navigational system, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the search.

## II. FACTS

  E.  On about December 16, 2009, the undersigned affiant presented to the United States District Court for the District of New Hampshire, an application and affidavit in support of authority to execute a search warrant at the residence of Patricio Paladin,
. The affiant's application for said search warrant was granted by United States Magistrate Judge, James R. Muirhead. The aforementioned application, affidavit, and search warrant, filed with the court on December 16, 2009, are attached hereto and incorporated herewith.

  F.  rant was executed at
on or about December 17, 2009. Among other things, the search warrant authorized the seizure of cellular telephones. During the course of the search, several cellular telephones were located and seized. These are described as follows:

1) White Samsung T-Mobile cellular telephone
2) Black Motorola Tracfone
3) Black Motorola T-Mobile 2GB cellular telephone
4) Maroon Samsung ATT cellular telephone
5) Red/black Nokia Xpress Music cellular phone
6) White Sony Ericsson ATT cellular telephone
7) Blue LG ATT cellular telephone
8) Red T-Mobile Blackberry cellular telephone
9) Blue Nextel Flip i860 cellular telephone

The above described items # 1 - 5 and 9 were

       recovered in the bedroom of a home shared by Patricio Paladin and his live-in girlfriend, Christy Fernandez.  Item # 6 was recovered in a lower level common area.  Item # 7 was recovered in the main floor dining room. Item #8 was recovered in the kitchen.

G.    During the search of the residence, Christy Fernendez was present in the home and admitted to knowing the location of a key to a locked closet located on the second floor.  That closet was found to contain approximately 3 kilograms of cocaine.  Also, during a search of the person of Christy Fernandez, the following cell phone was recovered:

      10)   White Samsung T-Mobile cellular telephone

H.    On December 17, 2009, Paladin was arrested while operating a vehicle registered to Enterprise Rent a Car.  The arrest took place in Habersham County, Georgia by the Hall County Sheriff's Office, pursuant to a federal arrest warrant.  At the time of his arrest, Paladin was found in possession of the following devices:

     11) Motorola i856 Boost Mobile
     12) Apple Iphone
     13) Sony Nav-U GPS Unit

    Paladin was also found to possess $11,014 in cash, and 9.9 grams of marijuana.

I.    As described in the affidavit filed with this Court on December 16, 2009, evidence developed during the course of this investigation revealed that Paladin routinely used cellular telephones in his dealings with cooperating individuals and, on one occasion, Paladin told CI#2 that his old telephone number was "going for a swim."

J.    Subsequent to the execution of the search warrant at _____ , your affiant interviewed an individual, described for purposes of this affidavit as CI#3, who possessed information about the activities of Paladin in the distribution of controlled substances.

K.  CI#3 stated to this affiant that Paladin had been upset about the quality of the cocaine located in the closet of the home.  CI#3 had recently overheard Paladin talking on the phone to his uncle complaining about the fact that the cocaine sent to Paladin had been "stepped on."  According to CI#3, Paladin's trip to Georgia was for the purpose of correcting the problem with the poor quality cocaine.

L.  An individual previously identified for the purposes of the previously submitted affidavit as CI#2 stated to this affiant that Paladin's live-in girlfriend, Christy Fernandez, assisted him with his drug distribution activities.  CI#2 indicated that during the summer of 2008, CI#2 acquired approximately ten ounces of cocaine from Fernandez when Paladin was unavailable.

M.  During the execution of the search warrant on or about December 17, 2009, Christy Fernandez was asked by law enforcement about the whereabouts of Paladin. Fernandez initially asserted that Paladin lived in Massachusetts and that she had not seen him since the previous Monday.  Fernandez eventually admitted that Paladin did in fact reside at                                    with her and that she had driven Paladin and her cousin to Enterprise Rent a Car in Nashua the previous day. Fernandez indicated that Paladin had packed a bag and told her he would be back on Sunday.

Fernandez also stated that Paladin had two active cell phones, one to conduct his drug business and one for personal business.  Fernandez stated that Paladin took six or seven trips of two to four days duration over the preceding few months for purposes of furthering his drug business.  She further indicated that Paladin did not work a legitimate job.

Nevertheless, Fernandez admitted                  pays rent of $1800 per month for the residence and deposits $2000 per month into his mother's Bank of America account.  Fernandez admitted that Paladin would frequently ask her to

4

       make deposits to the Bank of America account. Finally, although Fernandez initially attempted to minimize her involvement with Paladin's activities, she eventually admitted to assisting Paladin by reserving rental vehicles for him to use for travel associated with his drug distribution activities.

N.    Based upon this affiant's training and experience, I know that individuals involved in the distribution of controlled substances often use cellular telephones in furtherance of their activities and will often "drop" a telephone number to avoid detection by law enforcement authorities. Similarly, such persons often employ multiple cell phone accounts in furtherance of their illicit activities.

O.    Based upon my training and experience, I know that cellular telephones are used to order drugs from suppliers, take orders for drugs from buyers, and make other arrangements as necessary to the drug trafficking enterprise. The electronic memory of cellular telephones include address books, recent contacts, outgoing and incoming call records, photographs, and text messages which often reveal the identity of persons who are engaged with the drug trafficker in the movement of controlled substances and proceeds.

P.    Based on my training and experience, I know that global positioning systems (GPS) include an electronic memory which stores data including selected destinations inputted by the user. Such data can be stored by the GPS unit over a prolonged period of time and can reveal the previous or the intended destinations visited by the person(s) using the GPS device.

## III.   <u>CONCLUSION</u>

Q.    Based upon the information set forth above, which is true and accurate to the best of my knowledge information and belief, there is probable cause to believe that there exists evidence of violations of Title 21, United States Code, Section 841(a)(1) and 846 as well as Money Laundering, in violation of Title 18, United States Code, Section 1956.

within the following described devices:

1) White Samsung T-Mobile cellular telephone
2) Black Motorola Tracfone cellular telephone
3) Black Motorola T-Mobile 2GB cellular telephone
4) Maroon Samsung ATT cellular telephone
5) Red/black Nokia Xpress Music cellular phone
6) White Samsung T-Mobile cellular telephone
7) White Sony Ericsson ATT cellular telephone
8) Blue LG ATT cellular telephone
9) Red T-Mobile Blackberry cellular telephone
10) Blue Nextel Flip i860 cellular telephone
11) Motorola i856 Boost Mobile cellular telephone
12) Apple IPhone cellular telephone
13) Sony Nav-U GPS Unit

Therefore, this affiant makes application that this Court issue a warrant authorizing the search of the items described at paragraph P above, which are currently in the possession of the government.

/s/ Mark W. Alford
Mark W. Alford
FBI Special Agent
Federal Bureau of Investigation

Sworn to and subscribed to before me this ____ day of June    ,2010.

_____
Landya B. McCafferty
United States Magistrate Judge
District of New Hampshire

AO 106 (Rev 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Hampshire

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2009 DEC 16 P 1: 59

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 09mj106
5 Nakomo Drive )
Litchfield, New Hampshire )

**SEALED DOCUMENT**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*
a single family house, #5 on mailbox, beige in color, with large bay window on the upper floor on both sides of the front door, three windows on lower floor front side of house, wooden steps leading to second story doorway entrance, with two sheds in the backyard, and large evergreen trees bordering Nokomo Drive

located in the _____ District of ____New Hampshire____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A to the Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                    *Offense Description*
21 U.S.C. 841(a)(1) and 846    Conspiracy to distribute, and possess with intent to distribute cocaine

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mark W. Alford, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/16/09

*Judge's signature*

City and state: Concord, New Hampshire

James R. Muirhead
*Printed name and title*

**AFFIDAVIT OF FBI SPECIAL AGENT MARK W. ALFORD**

I.   **INTRODUCTION**

A. Your Affiant, Mark W. Alford, is a Special Agent of the Federal Bureau of Investigation (hereafter, "FBI") and has served in that capacity since January 1997. During this time, I have participated in numerous Search Warrants and been the affiant on Search Warrants. I am currently assigned to the FBI Bedford, New Hampshire Resident Agency Safe Streets Gang Taskforce.

B. On the basis of the following information, I believe that there is probable cause to believe that the following house,

Contains evidence of the crime of conspiracy to distribute, and possess with intent to distribute, cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846.

C. The statements contained in this affidavit are based, in part, on information provided by the FBI, Manchester Police Department, and the New Hampshire State Police. In addition, information contained in this affidavit is also based upon information provided by two confidential informants (CI1 and CI2). The confidential informants have been deemed reliable because their information has been corroborated by independent law enforcement investigation.

D. Since this affidavit is being submitted for the purpose of securing authorization for the search of                                                      , I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the search.

II.   **FACTS**

  A. On or around November 27, 2007, members of the FBI and the Manchester, New Hampshire, Police Department met with a confidential informant (hereafter, "CI1") regarding its knowledge of Patricio Paladin, a/k/a "Mex" (hereafter, "Paladin"), DOB            . CI1 informed law enforcement that it was aware that Paladin was involved in the illegal distribution of cocaine and was interested in supplying CI1 with cocaine for distribution in New Hampshire. At the time CI1 met with law enforcement it provided telephone number                as the number it utilized to contact Paladin.

  B. Based on the information provided by CI1, law enforcement utilized it in order to arrange for the purchase of approximately 131 grams of cocaine

from Paladin. On December 10, 2007, at approximately 5:45 pm, CI1 attempted to speak with Paladin telephonically. On December 13, 2007, at approximately 11:13 am, CI1 spoke telephonically with Paladin, however, he advised that he was currently in Boston. On December 28, 2007, at approximately 11:45 am, CI1 spoke telephonically with Paladin. Paladin advised that he was not around and could not meet with CI1 until the following week.

C. On January 4, 2008, CI1 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results. CI1 was equipped with an audio recording device and was provided with $1,500 in United States currency. CI1, who was surveilled by law enforcement officers, then traveled to a Dominos parking lot, Chelmsford Street, Lowell, Massachusetts. At approximately 3:06 pm a dark green Cadillac with Massachusetts license plate          (vehicle is registered to Patricio Paladin) was observed in the area. At 3:07 pm Paladin was observed walking on foot from the Burger King, Chelmsford Street, Lowell, Massachusetts to CI1's vehicle. Paladin entered the front passenger seat of CI1's vehicle. CI1 paid Paladin $1,500 for a prior cocaine debt with Paladin. At 3:13 pm Paladin exited CI1's vehicle and walked on foot back to his Cadillac. At 4:15 pm CI1 received an incoming telephone call from Paladin who advised the he is on to meet with CI1. At 4:23 pm Paladin instructed CI1 to meet at the Wendy's Restaurant parking lot which was adjacent to the Burger King. Paladin was observed walking on foot to the Wendy's parking lot and entered the front passenger seat of CI1's vehicle. Paladin produced from his sweatshirt pocket a bag containing approximately five ounces of cocaine. This cocaine was fronted to CI1 with the expectation that CI1 would pay Paladin at a later date for the cocaine.

D. On January 30, 2008, CI1 received an incoming telephone call from Patricio Paladin. Paladin was very agitated and looking for the money CI1 owes him. CI1 believed that it owed Paladin $3,800 for the cocaine received on January 4, 2008.[1]

E. On October 16, 2009 CI2 spoke telephonically with Paladin at telephone number             . Paladin advised that as soon as the time was right he will go crazy selling drugs for a period of three or four months. After this

---

[1]  Subsequent to its interaction with Paladin, CI1 was determined to be involved in illicit drug transactions while acting as an informant. As a result, CI1 was investigated, prosecuted, and convicted on a total of four counts of distribution and conspiracy to distribute controlled substances and is currently serving a period of incarceration.

time period Paladin will take more time off from selling drugs. CI2 advised Special Agent Mark W. Alford that Paladin maintains detailed records of who owes him money for drug distribution at his residence. In the past, CI2 has spoken to Paladin telephonically while Paladin was at his house regarding the balance CI2 owed Paladin for cocaine. CI2 advised that Paladin retrieved a ledger from the house and told CI2 the exact amount CI2 owed Paladin.[2]

F. On November 12, 2009 CI2 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results. CI2 was equipped with an audio recording device. CI2 was surveilled by law enforcement to the area of a                    , Manchester, New Hampshire. At 5:50 pm CI2 spoke telephonically with Paladin at telephone number (603)513-5489. Paladin and CI2 agreed to meet at the                    , Manchester, New Hampshire parking lot. At 6:03 pm CI2 advised Special Agent Mark W. Alford that Paladin was parked across the street and was watching the parking lot. At 6:09 pm Paladin arrived at the                    Manchester, New Hampshire parking lot driving a green Ford Explorer with New Hampshire license        and parked next to CI2. Paladin exited the driver's seat of the Ford Explorer and entered the passenger seat of CI2's vehicle. Paladin recovered a plastic bag containing approximately six ounces of cocaine from his sweatshirt pocket. Paladin advised CI2 that he wanted $35 per gram for the cocaine.
The substance received from Paladin was sent to the Drug Enforcement Administration Northeast Regional Laboratory and was found to contain cocaine, a scheduled II controlled substance.

G. On November 19, 2009 CI2 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results. CI2 was equipped with an audio recording device and was provided with $3,000 in United States currency. CI2 was surveilled by law enforcement to the area of                    , Manchester, New Hampshire. CI2 spoke telephonically with Paladin at telephone number                    Paladin stated that his old telephone number was "going for a swim." At 6:10 pm law enforcement surveillance units observed a green Cadillac, driven by a male, bearing Massachusetts license plate        , exit                    and drove southerly. At approximately 6:30 pm, Paladin and CI2 met at the                    Manchester, New Hampshire.

---

[2] Prior to CI2's involvement in this investigation, CI2 had previously been convicted of distribution of controlled substances and had served a period of incarceration for those offenses.

    During this meeting CI2 paid Paladin $3,000 in United States currency for approximately half of the amount due for the cocaine received on November 12, 2009.  At 8:20 pm, Paladin exited the                    , Manchester, New Hampshire and was surveilled by law enforcement.  Paladin did not make any stops along the way and was observed returning to                                                      at approximately 8:42 pm.

H. On December 8, 2009 CI2 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results.  CI2 was equipped with an audio recording device and was provided with $2,550 in United States currency.  CI2 was surveilled by law enforcement to the area of                               Manchester, New Hampshire.  CI2 spoke telephonically with Paladin at telephone number                  At 11:19 am law enforcement established surveillance at 5 Nakomo Drive, Litchfield, New Hampshire.  A white older model Chevy Blazer, green Ford Explorer, green Cadillac, white Honda, and a beige Audi were observed parked at                                       .  At 12:54 pm a green Cadillac with Massachusetts license plate           departed                         , and was driven by Patricio Paladin.  Law enforcement followed Paladin directly to the meeting with CI2 at                    Street, Manchester, New Hampshire.  At 1:08 pm Paladin arrived at                          Manchester, New Hampshire and met with CI2 in the parking lot.  CI2 provided Paladin with $2,550 in United States currency as payment toward a six ounce cocaine drug debt.  Paladin advised CI2 that he would go pick up some of his cocaine supply and deliver it to CI2 in a short while.  At 1:17 pm Paladin departed the parking lot, with the $2,550 in United States currency he received from CI2 and drove the green Cadillac back to                                             without making any stops.  Paladin was surveilled by law enforcement from the meeting with CI2 back to                                  .

I. At 2:33 pm, CI2 spoke telephonically with Paladin at telephone number                 .  Paladin advised that he left his house five minutes ago with his daughter and was on his way to meet with CI2.  At 2:53 pm CI2 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results. CI2 was equipped with an audio recording device.  CI2 was surveilled by law enforcement to                     Manchester, New Hampshire.  At 2:56 pm CI2 arrived at                   Street, Manchester, New Hampshire.  At 2:58 pm Paladin arrived at the meeting location with CI2.  Paladin drove a white Audi with temporary vanity

      New Hampshire license plates.  Paladin exited the driver's seat of the Audi and stood outside of CI2's vehicle on the passenger side.  Paladin provided CI2 with a plastic bag containing approximately six ounces of cocaine.  Paladin advised that the price of the cocaine was $26 per gram.  Paladin also advised CI2 that he currently had seven or eight kilograms of cocaine that he was trying to sell.  At 3:00 pm Paladin exited the parking lot and was surveilled by law enforcement to Concord, New Hampshire where surveillance was discontinued.

J. The substance received from Paladin was field tested and showed a presumptive positive for the presence of cocaine.

K. On December 16, 2009, at approximately 5:50 pm, CI2 and its vehicle were searched for unexplained amounts of currency and controlled substances with negative results.  CI2 was equipped with an audio recording device.  CI2 was surveilled by law enforcement to              .  At approximately 6:18 pm, CI2 arrived at                   ,                   .  CI2 was met by Paladin who exited the residence and met with CI2 outside.  Paladin had approximately one kilogram of cocaine hidden inside his pants when he exited the residence.  Paladin placed the kilogram of cocaine inside CI2's vehicle.  Paladin advised CI2 that he wanted $25,000 as payment for the kilogram of cocaine.  Paladin expects payment by December 17, 2009.  At approximately 6:57 pm, CI2 departed

L. The substance received from Paladin was field tested and showed a presumptive positive for the presence of cocaine.

M. Paladin was previously convicted of distribution of a controlled substance in the New Hampshire Superior Court in 2003 and was sentenced to a period of incarceration.

## III.  CONCLUSION

On the basis of the following information, I believe that there is probable cause to believe that the following residence,

contains evidence of the crime of conspiracy to distribute, and possess with intent to distribute, cocaine , a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846.  I therefore request that the honorable court authorize a search warrant for said residence and curtilage to permit a search for the items set forth in Attachment A, which is attached hereto and incorporated herewith.

/s/ Mark W. Alford
Mark W. Alford
FBI Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 16th day of December, 2009.

_____

James Muirhead

United States Magistrate Judge

District of New Hampshire

**Attachment A**

Authorization is requested to search
described as a

(1) Cocaine;
(2) Scales, wrappers, baggies and other paraphernalia utilized in the distribution of cocaine;
(3) United States currency;
(4) Ledgers, records, documents, or other memorialization of trafficking and distribution of cocaine, including customer lists, customer telephone numbers, and customer codes;
(5) Books, records, receipts, notes, ledgers, and other documents relating to the distribution of cocaine and/or the identity of co-conspirators;
(6) Items of personal property which tend to identify the person(s) in control, possession, and ownership of the property that is the subject of this warrant, including, but not limited to, canceled mail, photographs, personal telephone books, diaries, bills and statements, keys, identification cards and documents, airline tickets and related travel documents, bank books, checks and check registers;
(7) Any and all evidence of firearms;
(8) Evidence of investment and expenditure of proceeds derived from drug trafficking and records of financial transactions relating to drug trafficking; and
(9) Cellular telephones.

**NOTE:** The search authorized herein includes not only the residential structure described in this warrant, but additionally garages and other storage buildings, lockers/areas, detached closets, containers, and yard areas associated with that described residence and/or used in connection with or within the curtilage of

.